GREGORY SCOTT, APPELLANT, *v.* STATE OF NEVADA, RESPONDENT.

Nos. 5897 and 5901

February 27, 1970                    465 P.2d 620

[Rehearing denied March 30, 1970]

*J. Rayner Kjeldsen,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

These direct appeals were consolidated for argument since the claimed errors in each case are identical. Scott was convicted in separate trials of the Zanzibar Motel and Holiday Inn robberies. The main question is whether certain items of evidence found in the small console compartment ahead of the gearshift handle of Scott's automobile were the product of an illegal search. The search was made without a warrant, was not incident to Scott's arrest, nor consented to by him. Nonetheless, the State contends that the search and seizure of evidence was reasonable within the context of this case and not violative of the proscriptions of the Fourth Amendment.

The challenged search occurred at the police impound lot three days after Scott's arrest. His car had been twice previously searched by police officers, initially at the time of arrest and again the following day at the impound lot. The second search was pursuant to a warrant. Neither search turned up incriminating evidence.

The third search, with which we are concerned, came about in the following manner. A police officer assigned to the auto theft department checked out the impound report on the car. He learned that no evidence of registration was taken from the car when impounded and none was found on Scott's person when he was arrested. The car bore an Alabama license plate. In checking with Alabama the officer was informed that the serial number on the car, a Mercury, had never been registered in Alabama. Although the license plate on the Mercury was registered to Scott, it belonged to a 1967 Chevrolet. With this information the officer decided to search the car for some formal indicia of ownership. He found none. However, he did find a gun and some money in the small console compartment ahead of the gearshift handle. These items were received in evidence at the trials which followed.

1. The proper starting point for our discussion is the important United States Supreme Court opinion in Preston v. United States, 376 U.S. 364 (1964). In that case the police arrested three men for vagrancy after receiving a report that the men were acting suspiciously because they had spent most of the night seated in a motor car parked in a business district. When arrested, they were searched for weapons and then taken to the police station. The car was not searched at that time. Later the police towed the car to a garage and twice searched it. They found evidence of a planned robbery for which the trio was charged and convicted. These searches were without warrants. The prosecutor attempted to justify them on the ground that they were incident to a lawful arrest. The High Court rejected that contention in these words: "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time and place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Id. at 367. It is apparent that the search in the instant matter was not incident to Scott's arrest, since it was remote in time and place from his arrest. Thurlow v. State, 81 Nev. 510, 406

P.2d 918 (1965).[1] Indeed, the State does not suggest that the search may be upheld as a search incident to arrest. The State does urge, however, that Preston does not automatically invalidate every search which is remote in time and place from the arrest. All that Preston stands for, according to the State, is that such a search cannot be deemed incident to arrest. Consequently, other circumstances may exist in a particular case which will allow a court to declare a search reasonable within the intendment of the Fourth Amendment notwithstanding the fact that it was not substantially contemporaneous with the arrest. We are referred to the post-Preston opinions of the High Court in Cooper v. California, 386 U.S. 58 (1967), and Harris v. United States, 390 U.S. 234 (1967), and to the California intermediate appellate court opinion of People v. Prochnau, 59 Cal.Rptr. 265 (1967). We turn to consider this contention.

2. Cooper v. California, supra, upheld a warrantless search of a car impounded "as evidence" pursuant to a state statute. The police there were required to seize the car and to keep it until forfeiture proceedings could be completed. The search occurred a week after Cooper's arrest. In those limited circumstances the court wrote, "it would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection to search it." Id. at 61–62. Cf. NRS 453.145 directing forfeiture of an automobile used for the illegal keeping of narcotic drugs. And in Harris v. United States, supra, an examination of an impounded car was upheld because, while engaged in the performance of their duty to protect the car, the police came across incriminating evidence which was plainly visible. Indeed, in that case there was no search at all, and the question was whether evidence in plain view was subject to seizure.

It is apparent that the doctrine of Cooper does not validate the search in this case. Scott's car was not impounded pursuant to a state statute directing such conduct when a car is used to keep or transport narcotics, as was the case in Cooper. Moreover, the purpose of the instant search was not related to the crime for which Scott was arrested. That relationship existed in Cooper. Here, the two prior searches were conducted to

---

[1]In the later decision of Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967), one justice dissenting, Preston and Thurlow were not followed. That decision was recently set aside by the Ninth Circuit Court of Appeals, Heffley v. Hocker, 420 F.2d 881 (1969).

find evidence of the robberies and nothing was discovered. The third search was to ascertain whether a different crime had been committed—auto theft. This significant fact also distinguishes this case from the California intermediate appellate court decision of People v. Prochnau, supra. Indeed, where the search is not aimed at finding evidence related to the crime for which the defendant was arrested, it has been held invalid even though conducted shortly after the arrest at a nearby police station. Barnett v. United States, 384 F.2d 848 (5 Cir. 1967).

Neither is Harris v. United States, supra, of aid to the State. We simply may not conclude, as did the Court in Harris, that there was no search since the incriminating evidence was in plain sight. Here, the evidence was hidden. Neither Cooper nor Harris have materially diluted the doctrine of Preston. That doctrine continues to be viable as is evidenced by the High Court's reliance upon it in Dyke v. Taylor Implement Co., 391 U.S. 216 (1969), and its approving reference to Preston in Chimel v. California, 395 U.S. 782 (1969).

Finally, we must accord due respect to the recent decision of the Ninth Circuit Court of Appeals in Heffley v. Hocker, supra, footnote 1. That decision used the doctrine of Preston to overturn our decision in Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967). We hold, therefore, that the challenged search violated the Fourth Amendment.

3. The State suggests that if constitutional error occurred, it was harmless. It is true that an automatic reversal is not mandated when evidence obtained by means of an unreasonable search and seizure is received at trial. Thurlow v. State, 81 Nev. 510, 516, 406 P.2d 918 (1965); Fahy v. Connecticut, 375 U.S. 85 (1963). We may review the record with the doctrine of harmless error in mind. The applicable standard, however, is strict. We cannot declare federal constitutional error harmless unless we sincerely believe that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967).

Applying the Chapman standard to the Zanzibar Motel case we are unable to conclude that the error was harmless as to Scott. The robbery was at gun point and $134 was taken from the till. The challenged search of Scott's car produced a gun and $134, and these were received in evidence at the trial.

Although eyewitnesses identified Scott as the robber, Scott testified that he was not the perpetrator. The gun and money must have had a significant effect in persuading the jury to reject Scott's disclaimer.

The Holiday Inn case is a different matter. Scott did not testify at that trial. The State's main witness positively identified Scott as the robber and that identification was corroborated to some extent by the testimony of a handwriting expert who compared Scott's registration card at the Inn with an exemplar of his handwriting and found both to have been written by the same person. The introduction of the gun into evidence without the fruits of the robbery was insignificant and harmless.

We have examined all other claims of error in each case and find them to be without merit.

The conviction in the Zanzibar Motel case is reversed and that matter is remanded for a new trial. The conviction in the Holiday Inn case is affirmed.

ZENOFF, BATJER, and MOWBRAY, JJ., concur.

COLLINS, C. J., dissenting:

It appears to me there is a theory upon which the evidence found by the police officer in the third search may be admissible and not in violation of appellant's Fourth Amendment rights.

In Katz v. United States, 389 U.S. 347 (1967), the U.S. Supreme Court held that the Fourth Amendment protects people, not places. *Id.* 351. Mr. Justice Stewart, speaking for the court, said, ". . . once it is recognized that the Fourth Amendment protects people—and not simply "areas"—against unreasonable searches and seizures, it becomes clear that the reach of the Fourth Amendment cannot turn upon the *presence or absence of physical intrusion into any given enclosure.*" *Id.* 353. In a concurring opinion, Mr. Justice Harlan explained the meaning of *Katz* in a slightly different way. He said, "My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " *Id.* 361. I am of the opinion that *Katz* controls the admissibility of evidence in this case rather than Preston v. United States, 376 U.S. 364 (1964), and Heffley v. Hocker, 420 F.2d 881 (1969).

The gun and money found in the console compartment of the automobile by the third officer whose search was not incident to appellant's arrest nor pursuant to a search warrant, was properly admitted for two reasons: first, the expectation of privacy which the Fourth Amendment protects had already been thwarted by the prior search warrant, and nothing was left to be protected by the issuance of another warrant. Katz v. United States, supra. Second, since the third search did not exceed the scope of the second search which was predicated upon a valid search warrant, no end is served by excluding otherwise admissible and relevant evidence. Hence, it was not unreasonable.

As indicated in Katz, the Fourth Amendment now protects an individual's expectation of privacy, not a particular area. Appellant's expectations of privacy as to anything secretly hidden in the automobile were effectively thwarted by the second search under a warrant. There was no justifiable reliance by appellant on privacy of the contents of the automobile following the second search. See From Private Places to Personal Privacy: A Post-Katz Study of Fourth Amendment Protection, 43 N.Y.U.L.Rev. 968 (1968). The automobile was constantly in custody of the police from the time of the second search until the third search. Appellant therefore had no opportunity to re-establish any justifiable reliance on privacy in the contents of the automobile. Had the automobile been restored to appellant's custody, then his Fourth Amendment rights can be said to have been revitalized. But to preclude a third search under the circumstances present here would be to exalt form over substance and add nothing to the protection of appellant's Fourth Amendment rights.

I would sustain both convictions.